

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

*overruled by*
*V-534 where*
*conflicts*

Honorable Weaver H. Baker, Chairman
Board of Control
Austin, Texas

*O-5187*

Dear Sir:

Opinion No. O-5187

Re: The authority of the
State Board of Control
to pay a contractor sums
expended by him to meet
the provisions of Article
5159a requiring that the
prevailing wage scale be
paid workmen engaged on
public works when through
mutual mistake of facts
the contract between the
Board of Control and the
contractor provides for a
lower rate of pay than
the prevailing scale;
and related questions.

We have your letter of July 8, 1943, enclosing letters from Moore Construction Company and John D. Reed, Commissioner, Board of Labor Statistics, together with your file pertaining to certain repairs and improvements made on the State Capitol Building. Said file, among other things, contained specifications on which bids were made to do the work above referred to, and the contract entered into between the Board of Control and Moore Construction Company.

Your letter and the enclosures enumerated revealed the following facts:

(1) The specifications made by you on which Moore Construction Company based its bid contained the following

Honorable Weaver H. Baker, page 2

provisions:

"LABOR REQUIREMENTS:

"The provisions of the prevailing wage law,
H. B. No. 54, Chapter 45, Acts of the Regular
Session of the Forty-third Legislature will be
in effect on this contract. The stipulated pre-
vailing rate of per Diem wages for this contract
is:

| "Class | "Per hour |
|--------|-----------|
| " * * * | " * * * |
| " * * * | " * * * |
| "Plasterers | $1.50 |
| " * * * | |
| " * * * | |

"The Contractor shall forfeit as a penalty to
the State ten ($10.00) dollars for such laborer,
workman or mechanic employed, for each calendar
day, or portion thereof, such laborer, workman,
or mechanic is paid less than the said stipulated
rates for any work done under said contract, by
him, or by any subcontractor under him."

(2) By letter dated February 4, 1942, the local
Plasterers' Union No. 783, notified the State Board of Labor
Statistics that the prevailing rate of wages for journeymen
plasterers would be increased from $1.50 per hour to $1.75
per hour on contracts entered into after April 12, 1942.
The Local's letter stated that the $1.50 rate had been main-
tained for four (4) years, but that increased living costs
necessitated the raise. The letter was received by the Bureau
of Labor Statistics on February 17, 1942. Local 783, affiliated
with the American Federation of Labor, claims jurisdiction of

Honorable Weaver H. Baker, page 3

the following counties: Travis, Bastrop, Hays, Lampasas, Fayette, Lee, Blanco, Burnett, Caldwell, Williamson, Llano, San Saba, and Bell.

(3) On April 1st before the effective date of the above referred to increase, the Bureau of Labor Statistics contacted numerous contractors in the Austin area to determine if the increase was acceptable to them. All replies received to inquiries indicated the increased rate was acceptable and no replies were received to the contrary. Letters were received from a number of contractors whose names are set out in the letter from the Commissioner of the Bureau of Labor Statistics, that the increased rates were agreeable to them. However, Moore Construction Company doesn't appear on said list. After receiving the favorable replies to its inquiry, the Bureau of Labor Statistics corrected its file to reflect $1.75 per hour as the prevailing wage scale for journeymen plasterers.

(4) Your letter stated that you failed to receive the notice mailed you by the Bureau of Labor Statistics as to the increased scale of pay of plasterers and you, therefore, set up the rate of $1.50 in your specifications on the contract later awarded to Moore Construction Company.

(5) The letter from Moore Construction Company to you stated that it was not notified at any time prior to signing the contract May 22, 1942, by the Labor Board, the plasterers' representative, or any other agency, concerning the increased rate of pay of plasterers until May 25, 1942, when said fact was called to its attention by the plasterers' representative. After checking with the State Labor Board, Moore Construction Company paid said prevailing wage, and now requests the Board of Control to remunerate it for the increased amount paid plasterers under it above the amount set out in the specifications and contract, together with the additional cost of insurance required and a 10% profit on said increased amounts.

Under the above facts taken from your letter and enclosures, you propound to us three questions as follows:

"1. Under the facts herein submitted and as shown by the attached file, in the light of the law of this State, do we owe Moore Construction Company on room repairs to the State Capitol on above described contract, dated May 22, 1942, the sum of $1609.10 for 6422 hours of labor for plasterers

Honorable Weaver H. Baker, page 4

paid an additional 25¢ per hour for work performed
by them on said job over and above the $1.50 per
hour set out in the contract.

"2. Are we bound to pay for the item of
insurance set out in such statement of $225.27?

"3. Are we bound to pay the $183.44 profit
claimed by the Moore Construction Company in view
of the facts and law above submitted?"

It is noted that both the specification for bids
and the contract entered into with Moore Construction Company
set out that the provisions of Article 5159a, Vernon's Annotated
Civil Statutes, would be in effect on this contract. Article
5159a, V.A.C.S., provides as follows:

"Sec. 1. Not less than the general prevailing
rate of per diem wages for work of a similar charac-
ter in the locality in which the work is performed,
and not less than the general prevailing rate of per
diem wages for legal holiday and overtime work, shall
be paid to all laborers, workmen and mechanics em-
ployed by or on behalf of the State of Texas, or by
or on behalf of any county, city and county, city,
town, district or other political subdivision of the
State, engaged in the construction of public works,
exclusive of maintenance work. Laborers, workmen
and mechanics employed by contractors or subcontractors
in the execution of any contract or contracts for pub-
lic works with the State, or any officer or public
body thereof, or in the execution of any contract
or contracts for public works, with any county, city
and county, city, town, district, or other political
subdivision of this State, or any officer or public
body thereof, shall be deemed to be employed upon
public works.

"Sec. 2. The public body awarding any contract
for public work on behalf of the State, or on behalf
of any county, city and county, city, town, district
or other political subdivision thereof, or otherwise
undertaking any public work, shall ascertain the
general prevailing rate of per diem wages in the
locality in which the work is to be performed for

each craft or type of workman or mechanic needed
to execute the contract, and shall specify in the
call for bids for said contract, and in the con-
tract itself, what the general prevailing rate of
per diem wages in the said locality is for each
craft or type of workman needed to execute the con-
tract, also the prevailing rate for legal holiday
and overtime work, and it shall be mandatory upon
the contractor to whom the contract is awarded, and
upon any subcontractor under him, to pay not less
than the said specified rates to all laborers, work-
men and mechanics employed by them in the execution
of the contract. The contractor shall forfeit as
a penalty to the State, county, city and county,
city, town, district or other political subdivision
on whose behalf the contract is made or awarded, Ten
Dollars ($10.00) for each laborer, workman, or mechanic
employed, for each calendar day, or portion thereof,
such laborer, workman or mechanic is paid less than
the said stipulated rates for any work done under
said contract, by him, or by any subcontractor under
him, and the said public body awarding the contract
shall cause to be inserted in the contract a stipula-
tion to this effect. It shall be the duty of such
public body awarding the contract, and its agents
and officers, to take cognizance of complaints of
all violations of the provisions of this Act com-
mitted in the course of the execution of the contract,
and, when making payments to the contractor of monies
becoming due under said contract, to withhold and re-
tain therefrom all sums and amounts which shall have
been forfeited pursuant to the herein said stipula-
tion and the terms of this Act; provided, however,
that no sum shall be so withheld, retained or for-
feited, except from the final payment, without a full
investigation by the awarding body. It shall be law-
ful for any contractor to withhold from any subcontrac-
tor under him sufficient sums to cover any penalties
withheld from him by the awarding body on account of
the said subcontractor's failure to comply with the
terms of this Act, and if payment has already been
made to him the contractor may recover from him the
amount of the penalty or forfeiture in a suit at law.

"Sec. 3. The contractor and each subcontractor
shall keep, or cause to be kept, an accurate record
showing the names and occupations of all laborers,

Honorable Weaver H. Baker, page 6

workmen and mechanics employed by him, in connection with the said public work, and showing also the actual per diem wages paid to each of such workers, which record shall be open at all reasonable hours to the inspection of the public body awarding the contract, its officers and agents.

"Sec. 4. Any construction or repair work done under contract, and paid for in whole or in part out of public funds, other than work done directly by any public utility company pursuant to order of the Railroad Commission or other public authority, whether or not done under public supervision or direction, or paid for wholly or in part out of public funds, shall be held to be 'public works' within the meaning of this Act. The term 'locality in which the work is performed' shall be held to mean the county, city and county, city, town, district or other political subdivision of this State in which the building, highway, road, excavation, or other structure, project, development or improvement is situated in all cases in which the contract is awarded by the State, or any public body thereof, and shall be held to mean the limits of the county, city and county, city, town, district or other political subdivisions on whose behalf the contract is awarded in all other cases. The term 'general prevailing rate of per diem wages' shall be the rate determined upon as such rate by the public body awarding the contract, or authorizing the work, whose decision in the matter shall be final. Nothing in this Act, however, shall be construed to prohibit the payment to any laborer, workman or mechanic employed on any public work as aforesaid of more than the said general prevailing rate of wages."

Sections 5 and 6 of said Act being penal provisions are carried as Article 1581a of the Penal Code and provide as follows:

"Sec. 5. Any officer, agent or representative of the State, or any political subdivision, district or municipality thereof, who wilfully shall violate, or omit to comply with, any of the

provisions of this Act, and any contractor or
subcontractor, or agent or representative thereof,
doing public work as aforesaid, who shall neglect
to keep, or cause to be kept, an accurate record
of the names, occupation and actual wages paid to
each laborer, workman and mechanic employed by him
in connection with the said public work, or who
shall refuse to allow access to same at any reason-
able hour to any person authorized to inspect same
under this Act, shall be guilty of a misdemeanor,
and upon conviction shall be punished by a fine of
not exceeding Five Hundred Dollars ($500.00), or by
imprisonment for not exceeding six (6) months, or by
both such fine and imprisonment, in the discretion
of the Court.

"Sec. 6. If any section, sentence, clause or
part of this Act is for any reason held to be un-
constitutional such decision shall not affect the
remaining portions of this Act.  The Legislature
hereby declares that it would have passed this Act,
and each section, sentence, clause, or part thereof,
irrespective of the fact that one or more sections,
sentences, clauses or parts thereof be declared
unconstitutional."

This Act has been construed by the Texas Courts in
the following cases: Southern Prison Company v. Rennels, 110
S. W. (2d) 606; Austin Bridge Company v. Teague, 149 S. W. (2d)
674; and Austin Bridge Company v. Teague, 152 S. W. (2d) 1091,
in which the Supreme Court reversed the judgment of the Court
of Civil Appeals in the same case.

The above decisions are not helpful to us in this
instance because they involve fact situations entirely differ-
ent from those presented here.

In the Southern Prison Company case the public body
awarding the work never made any determination of the prevail-
ing wage scale for the type of work done by plaintiff.

In the Austin Bridge Company case there was a con-
troversy as to whether the type of work done by the plaintiff
was skilled or unskilled labor.

Honorable Weaver H. Baker, page 8

In the instant case, we are confronted by a mutual mistake of fact made by the State Board of Control and the Moore Construction Company as to the prevailing wage scale for plasterers.

The contract entered into between them set out that the provisions of House Bill 54, Chapter 45, Acts of the Regular Session of the Forty-third Legislature, (Article 5159a, V.A. C. S., and Article 1581a, Penal Code) would be in effect on the contract. Both parties to the contract were bound by said Act and Moore Construction Company paid the prevailing rate on ascertaining what it was.

It is elementary that where there is a mutual mistake of fact that a contract will be reformed to express the true intent of the parties, except when rights of third parties have intervened, and in some other instances not involved here.

The rule is stated in "RESTATEMENT OF THE LAW OF CONTRACTS," Vol. 2, page 968, Section 504, as follows:

"* * * where both parties have an identical intention as to the terms to be embodied in a proposed written conveyance, assignment, contract or discharge, and a writing executed by them is materially at variance with that intention, either party can get a decree that the writing shall be reformed so that it shall express the intention of the parties, if innocent third persons will not be unfairly affected thereby."

From the above, it is apparent that our answer to your first question is that the State Board of Control is authorized to pay Moore Construction Company the sum of $1,609.10 being an additional twenty-five (25¢) cents per hour for 6422 hours of labor by plasterers, same having been paid said plasterers according to the letter from Moore Construction Company in addition to the $1.50 per hour provided in the contract and said total payment of $1.75 per hour being the recognized prevailing wage scale for plasterers in this vicinity.

The answer to your second question is controlled by the answer to the first question. The Board of Control is authorized to pay the amount of additional insurance paid by the contractor which was occasioned by said contractor paying the prevailing wage scale prescribed by law instead of the lower scale set out in the contract.

Our answer to your third question is that the Board of Control is not authorized to pay ten (10%) per cent profit on the two above referred to items, namely: the additional amount paid the plasterers and the additional insurance paid occasioned by the higher rate of pay, because the contract involved here was not a cost plus contract, no standards are set up in same to show how profits are to be arrived at, or even to show that the contractor expected to make a cash profit on this transaction.

Many times contracts are made without expectation of cash profit in order to keep regular workmen employed, to obtain future business, etc.

The items which we have held subject to payment here were paid by the contractor in compliance with State law. The item of ten per cent (10%) profit on said payments does not fall within this category.

Very truly yours,

ATTORNEY GENERAL OF TEXAS

By

E. R. Simmons
Assistant

APPROVED JUN 21 1940

Gerald C. Mann

ATTORNEY GENERAL OF TEXAS

ERS:EP



APPROVED
OPINION
COMMITTEE
BY
CHAIRMAN